## SWINFORD v. TEEGARDEN et al., Appellants.

### Division One, February 12, 1901.

1. **Breach of Warranty:** COLLATERAL ATTACK.  In a suit to set aside a deed made by defendant, based on a purchase by plaintiff of land at an execution sale under a money judgment against defendant for a breach of his warranty in a deed to land which he never owned, defendant can not show that he never owned the land conveyed by the warranty deed and never executed said deed, but signed it simply as a witness.  Such matters were proper defenses to the suit for damages for a breach of the warranty.

2. **Voluntary Deed:** VOID.  A deed made by one defendant to another to prevent the grantor's creditors from reaching the land, is a voluntary conveyance, and void as to the creditors of the grantor of such grantor.

3. ———: NO ACCOUNT STATED.  Where there is no sufficient basis for a computation afforded by the record to show that one of the defendants owed her son, another defendant, the amount of money stated as the consideration for the deed by her to him, or in fact that she owed him anything, and the evidence is oral, and supports the chancellor's finding of fact that it was a voluntary deed, this court will defer to his finding and uphold the judgment.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,*
Judge.

AFFIRMED.

*Harber & Knight* for appellants.

(1) All the evidence shows, that on part of plaintiff, and of defendants as well, that Mrs. Teegarden, nee Benedict, was

largely indebted to her son, Austin, and that the conveyance of August 14, 1889, was made by Mrs. Teegarden to her son, by reason of such indebtedness. Hence the allegation that said conveyance was voluntary, or without consideration, is without the slightest proof to sustain it. (2) Mrs. Teegarden, being indebted to her son Austin, had a perfect right to convey him property in payment of, or to be applied on her debt to him. And this is true, though such conveyance necessarily operated to delay Swinford, or any creditor she might have in the collection of any claim against her. Henderson v. Henderson, 55 Mo. 534; Milling Co. v. Burns, 152 Mo. 350; State ex rel. v. Purcell, 131 Mo. 312; Coffin Co. v. Rubelman, 15 Mo. App. 280; Ames v. Gilmore, 59 Mo. 537; Schroeder v. Bobbitt, 108 Mo. 289; Larrabee v. Bank, 114 Mo. 592; Ettlinger v. Kahn, 134 Mo. 492; Jaffrey v. Mathews, 120 Mo. 317; Bank v. Worthington, 145 Mo. 91. And we insist that the evidence is wholly lacking to show any fraudulent intent or wrongful act on the part, even, of Mrs. Teegarden, and confidently contend that the evidence shows that at the time she made the conveyance to Austin, she did not know that she had a creditor in the world other than her son. And hence she could not have had any purpose or intent in making said deed, other than to partly pay her son the amount she was justly indebted to him, which she had lost years before in her loans to the Crookshanks. But a fraudulent intent even upon the part of Mrs. Teegarden, would not be sufficient to in anywise affect the deed. Forrester v. Moore, 77 Mo. 657; Alberger v. White, 117 Mo. 347; State to use v. Mason, 112 Mo. 374; Bank v. Worthington, 145 Mo. 91; Milling Co. v. Burns, 152 Mo. 352; National Tube Works Co. v. Machine Co., 118 Mo. 365; Ettlinger v. Kahn, 134 Mo. 492; Van Raalte v. Harrington, 101 Mo. 602; Holloway v. Holloway, 103 Mo. 274; Kerstner v. Vorweg, 130 Mo. 200; Implement Co. v. Ritchie,

143 Mo. 611. (3) Dishonesty, fraud, is never presumed but must be proved, not conjectured; and we confidently insist that when given fair and impartial consideration the testimony, facts and circumstances in proof, shows the *bona fide,* and absolute good faith of the conveyance from Mrs. Teegarden to her son. Yet, if there were facts in proof which might give rise to the suspicion of the existence of fraud, such facts do not, even if they were uncontradicted, establish it. And when, as in this case, any such claimed circumstances, or facts, are fully overthrown and explained by the most indisputable evidence, no unfavorable inference can be drawn therefrom. Priest v. Way, 87 Mo. 16; Ridge v. Greenwell, 53 Mo. App. 479.

*C. J. Bain* and *Hall & Hall* for respondent.

(1) The final receipt and order of the probate court of Ionia county, Michigan, discharging the guardian, constituted a final judgment and was conclusive between the parties thereto and their creditors. They can not impeach or attack it in a collateral proceeding, but are estopped thereby as to their creditors. Cox v. Boyce, 152 Mo. 576; Smith v. Hauger, 150 Mo. 444; Nelson v. Barnett, 123 Mo. 564; State ex rel. Pountain v. Gray, 106 Mo. 533; Patterson v. Booth, 103 Mo. 417; Garton v. Botts, 73 Mo. 276; Miller v. Major, 67 Mo. 247; Dix v. Morris, 66 Mo. 514; Sheetz v. Kirtley, 62 Mo. 417; Lewis v. Williams, 54 Mo. 200; Brent v. Groses, 30 Mo. 253; State to use v. Roland, 23 Mo. 95; Jones v. Brinker, 20 Mo. 87; State ex rel. v. Bilby, 50 Mo. App. 168; Smith v. Denny, 34 Mo. 219; Robert v. Morren, 27 Mich. 306. (2) These deeds were voluntary, without consideration, fraudulent and void as to creditors. R. S. 1889, secs. 3397, 3398; Shanklin v. McCracken, 151 Mo. 597; Frank v. Reuter, 116

Mo. 517; Snyder v. Free, 114 Mo. 360; Patton v. Bragg, 113 Mo. 595. (3) While a debtor may prefer his creditors, if he conveys to a creditor more property than is sufficient to pay or secure his debt, the entire conveyance is fraudulent as to his other creditors, and is void. Imhoff & Co. v. McArthur, 146 Mo. 378; Bolin v. Ross, 120 Mo. 217; Tube Works Co. v. Machine Co., 118 Mo. 375; Alberger v. White, 117 Mo. 370; Segers Sons v. Thomas Bros., 107 Mo. 641; State ex rel. v. Hope, 102 Mo. 429; Sexton v. Anderson, 95 Mo. 379; Lumber Co. v. Mining Co., 78 Mo. App. 681; Ball v. O'Neill, 64 Mo. App. 388; Gregory v. Sitlington, 54 Mo. App. 65; Crawford v. Neal, 144 U. S. 685; Bump on Fraudulent Conveyances (4 Ed.), secs. 34, 485; Clark v. Lee (Mich.), 44 N. W. 260. (4) Fraud need not be proven by direct testimony; it may be inferred from circumstances. The false recital of the consideration in the deeds was a badge of fraud, as also the fact that the mother conveyed to her son all her property, and conveyance to relatives is always looked upon with suspicion, and payment of a valuable consideration must be made out by proof of the most unquestionable character. State to use v. Mason, 112 Mo. 382; Snell v. Harrison, 104 Mo. 188; Benne v. Schnecko, 100 Mo. 256; Hisey v. Goodwin, 90 Mo. 366; Baldwin v. Whitcomb, 71 Mo. 659; Gordon v. Isnay, 55 Mo. App. 323; Guarantee Co. v. Baker, 54 Mo. App. 79; State ex rel. v. Hope, 102 Mo. 429. (5) The defendants and their witnesses having all testified orally, the Supreme Court will defer to the chancellor unless clearly erroneous. Shanklin v. McCracken, 151 Mo. 594; Milling Co. v. Burnes, 144 Mo. 196; Parker v. Roberts, 116 Mo. 667; Benne v. Schnecko, 100 Mo. 257; Mathias v. O'Neill, 94 Mo. 529; Snell v. Harrison, 83 Mo. 658. (6) While the conclusion of facts drawn by the trial court from the evidence in an equity case are not regarded by this court as conclusive, but subject to review; yet much

deference is accorded such findings on account of the superior advantages they possess for weighing the evidence and judging of the credibility of the witnesses.   Parker v. Roberts, 116 Mo. 657; Mathias v. O'Neill, 94 Mo. 520; Chouteau v. Allen, 70 Mo. 290; Sharp v. Pike, 62 Mo. 307; Shanklin v. Mc-Cracken, 151 Mo. 587; Eskine v. Lowenstine, 82 Mo. 309; Springer v. Kleinsorge, 83 Mo. 159; Berry v. Hartzell, 90 Mo. 138; Bushong v. Taylor, 82 Mo. 660.

MARSHALL, J.—This is an action to set aside a deed to certain land in Grundy county, from Sarah Teegarden, formerly Benedict, and her husband, to her son, Austin B. Benedict, dated August 14, 1889, and a deed to the same land from Austin B. Benedict and wife, to Alice J. Dean, niece of Mrs. Teegarden, on the ground that such deeds were made without consideration and for the purpose of hindering, delaying and defrauding the plaintiff in the collection of his claim against Mrs. Teegarden.   The answers of defendants Teegarden and Benedict allege that the plaintiff's claim and judgment against Mrs. Teegarden are fraudulent and void, and deny generally the allegations of the petition, except as to the relationship of the parties.

The defendants formerly lived in Ionia, Michigan, where the defendant, Alice J. Dean, still resides.   The defendant Sarah Teegarden, was the widow, and Austin B. Benedict the son, of Dr. Thomas B. Benedict, who died in 1874.   The defendant Alice J. Dean, is the niece of defendant Sarah Teegarden.   Dr. Benedict left an estate valued at $8,979.22.   The defendant Sarah Teegarden was appointed administratrix of his estate in October, 1874, and guardian of Austin B. Benedict.   On the eleventh day of October, 1875, the defendant Teegarden as administratrix of the Thomas B. Benedict estate, filed a report or settlement in the probate court of her adminis-

tration of said estate up to that time. In this report she took credit for $2,761.71, on account of disbursements and uncollectible accounts, leaving a balance of $6,217.51, including the real estate valued at $3,800, and personal property valued at $377.

Defendants claim that the personal estate was loaned by the administratrix to the firm of Crookshank Bros., between 1880 and 1884. In 1884 Crookshank Bros. failed and made an assignment, at which time they were largely indebted to the Benedict estate, in payment of which they, or John C. Crookshank, one of the firm, turned over to the administratrix a stock of millinery goods of the value of $4,000. She moved this stock of goods to Kansas City, in 1884, at the instance of John C. Crookshank, who went to Kansas City about that time. With the aid of Crookshank she bought and traded and added to this stock. On the 29th day of May, 1885, she traded a part of this stock to S. R. Nelson for the land in controversy, subject to an incumbrance of $750. On the 8th day of February, 1887, defendant Austin B. Benedict, became of age. On the 12th day of April, 1887, the defendant Sarah Teegarden made final settlement as guardian of defendant, Austin B. Benedict, and Austin B. executed to her a final release under seal, releasing and discharging her from all liability on account of said guardianship absolutely and forever. On the same day the probate court of Ionia county, Michigan, by an order of record, discharged and released said guardian and her securities from all liability concerning her administration of said estate.

On the 2d day of May, 1887, defendant, Sarah Benedict, was married to James M. Teegarden, who died before the commencement of this suit.

On the 11th day of November, 1886, the defendant Teegarden executed and delivered to the plaintiff a warranty deed

to eighty acres of land in Dade county, Missouri, in exchange for a stock of millinery goods, which was valued at $1,200 in the trade. The said defendant, Teegarden, had no title to this property. On the 23rd day of August, 1889, the plaintiff commenced suit against her and her deceased husband in the circuit court of Jackson county, Missouri, on account of the breaches of the covenants in said warranty deed made to him, and recovered judgment against her in said court on the 4th day of June, 1894, for $1,817.70.

On the 26th day of November, 1896, plaintiff caused execution to be issued upon said judgment, the lands in controversy to be levied upon and sold to satisfy the same. At which sale plaintiff became the purchaser, and received a sheriff's deed therefor.

On the 14th day of August, 1889, nine days before the commencement of the suit by plaintiff for the breaches of the covenants in said deed, the defendant, Sarah Teegarden, and her husband, by warranty deed conveyed the lands in dispute to the defendant, Austin B. Benedict. The consideration named in the deed being $4,500.

On the 13th day of March, 1893, Austin B. Benedict and wife conveyed to Wm. Mason about one hundred and ten acres of said lands.

On the 11th day of July, 1893, they conveyed, by general warranty deed, to Alice J. Dean, the remainder of said lands, the consideration named in said deed being $3,390.

The other facts and contentions of the respective parties will sufficiently appear in the course of this opinion. There was a decree for the plaintiff, and after proper steps the defendants appealed.

I.

It is claimed by defendant Teegarden, that she never owed

Vol 159 mo—41

the plaintiff anything and never made a deed to him of the Dade county lands; that she never owned any land in Dade county, and never exchanged any such land with the plaintiff for his stock of millinery goods; that Gilruth and Crookshank traded with the plaintiff for his stock of goods and gave him the land in Dade county for it, and that she signed the deed only as a witness and without reading it, and that she took charge of the stock of goods for Gilruth and Crookshank and sold some of the goods and accounted to them for the proceeds.

If all of this be conceded to be absolutely true, it can not avail her anything in this action. She ought to have set up that defense to the suit of the plaintiff against her, in Jackson county, when he sued her for breach of warranty in the deed to the Dade county land. She can not attack the judgment rendered against her in that case in this collateral proceeding. [Bates v. Hamilton, 144 Mo. 1.]

But she did not make any such claim in that case. She answered in that suit and admitted the exchange of the land in Dade county for the stock of goods, and admitted that she made the deed to the Dade county land, but pleaded that while she believed she had a perfect title to the land, she had only agreed to give the plaintiff a quitclaim or special warranty deed to it, and that it was a mistake of the scrivener to make a warranty deed and therefore she asked to have the deed reformed. But even this she did not attempt to sustain by proof, but on the contrary let judgment go against her by default. It is too late now to inquire into the matters concluded by that judgment.

The plaintiff claims that the deed from Mrs. Teegarden to her son Austin B. Benedict is fraudulent, and also that his deed to his cousin, Mrs. Dean, is fraudulent. It is admitted that Austin's deed to Mrs. Dean was made to prevent his creditors from reaching it, and that it was a voluntary conveyance.

That deed is therefore void. So the matter stands as if the title of record was still in Austin.

The plaintiff claims that the deed from Mrs. Teegarden to Austin was made nine days before the plaintiff instituted the suit against her in Jackson county and when she knew that she was about to be sued, and that it was a voluntary conveyance, made to defraud him and to put her property out of the reach of any judgment he might obtain against her in his suit upon her warranty.

On the other hand the defendants claim that Austin had never heard of the plaintiff or his suit and never knew that his mother owed any one except him, and both he and his mother claim that the deed to the land in question was made by his mother in payment of his share of his father's estate, which his mother, as his guardian, had loaned to Crookshank Bros., and which was lost by the failure of that firm.

In reply to this contention the plaintiff says that Mrs. Teegarden never loaned any such amount as she claims to Crookshank Bros., and that after the failure of that firm they turned over to her four thousand dollars' worth of millinery goods, which she moved to Kansas City; that she afterwards traded a part for this land; that when Austin attained his majority she went to Michigan and made a final settlement as administratrix of her husband's estate, which showed: Amount of inventory, including real estate, appraised at $8,874.77, gained $154.45, aggregating $9,029.22; loss uncollectible accounts $1,063.10, paid funeral and other expenses $1,450.37, debts paid $248.24, real estate as inventoried $3,800, aggregating $6,561.71; and leaving in her hands for distribution, including real estate, $6,217.51, and that Austin then executed a receipt in full and release to his mother of his share of the estate. The plaintiff then shows that Mrs. Teegarden turned over the homestead, personal prop-

erty and library to Austin which he sold, realizing $1,300 for the homestead, $125 for the personal property and $50 for the library; that she paid him $100 in cash and also conveyed to him some land in Kansas City, the equity of redemption in which was worth $2,200. The plaintiff then takes the $6,217.51, balance shown by her final settlement, deducts therefrom the real estate, $3,800, and the personal property allowed the widow, $377, aggregating $4,177 from the balance of $6,217.51 so found upon final settlement, and shows that the personalty to be distributed amounted to $2,040.51, of which Austin's share would be $1,020.25, which with seven years' interest at six per cent would aggregate $1,448.76, as the amount due him, exclusive of his half interest in the real estate. And then the plaintiff shows that the proceeds of the sale of the real estate, personal property and library, together with the $100 cash, amounted to $1,575, or $126.24 more than the $1,448.76 his mother owed him. This calculation does not take into account the value of the equity of redemption in the lot in Kansas City, which plaintiff values at $2,200, but which the defendant Austin says was worse than nothing, for he was liable for the incumbrance on the land and the land would not probably sell for enough to pay all the incumbrance and he would be liable for the unpaid balance, and it was to avoid such contingency that he conveyed the Grundy county land to his cousin Mrs. Dean.

The plaintiff further relies upon the evidence that after Mrs. Teegarden conveyed this land to Austin, and after Austin transferred it to Mrs. Dean, Mrs. Teegarden continued to live on the land, to pay the taxes, repairs, etc., to control the property, ostensibly as tenant but really enjoying all the benefits of ownership, and on her statements that it was the only property she owned, and that she tried to sell it, saying Austin and Mrs. Dean would do whatever she said about it, and on Austin's let-

ters to his mother asking how the title stood and what he should say if he was interviewed about it, and advising his mother to sell the land and get money enough to live on, as facts and circumstances showing that her deed to Austin was fraudulent, and that she was the real owner all the time. The defendants to overcome this say that Mrs. Teegarden really owed Austin more than the settlement of his father's estate showed, and that he executed the release to his mother simply to enable her to close the administration on the estate, and while they admit he realized the $1,575 from the property and cash she turned over to him, claim she really owed him $4,500, the consideration stated in the deed from his mother to him to this land, at the time that deed was made. The evidence they adduced in support of this contention is of the most general character. No items are specified—conclusions alone are stated. A careful examination of the testimony fails to show sufficient data to state an indebtedness of Mrs. Teegarden to her son Austin of forty-five hundred dollars at the time she deeded this land to him on the 14th of August, 1889, and the testimony offered by the defendants on this subject is so vague, general and wanting in details that it is impossible to state any account between them or to afford a reasonable basis of calculation. The final settlement and the admitted amounts Austin received from his mother furnish the only certain elements upon which to predicate a finding, and upon such showing it appears that his mother had paid him more than his share of his father's estate (outside of the $3,800 in real estate, of which he owned a half interest and which is not accounted for or taken into consideration in this suit) at the time she made the deed to this land to him. This being true, that deed must be held to be a voluntary conveyance, and as to the plaintiff it is void in law.

The right of an insolvent debtor to prefer a *bona fide*

creditor is not questioned in this case. Therefore it is not necessary to consider the cases cited and relied upon by the defendants bearing upon such a proposition. The law applicable to this case is plain and well settled. The only conflict is as to matters of fact. The evidence supports the finding of the chancellor, and as the testimony was oral, he heard and saw the witnesses, and therefore this is a proper case for this court to defer to the finding of facts by the trial court, especially as above indicated there is no sufficient basis of computation afforded by the record to state an account which would show that Mrs. Teegarden owed her son Austin forty-five hundred dollars at the time she conveyed the land to him for an expressed consideration of that amount, nor in fact that she owed him anything whatever.

For these reasons the judgment of the circuit court is affirmed. All concur.